**In re Anonymous No. 35 D.B. 92**

Disciplinary Board Docket no. 35 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KERNS, *Member,* August 11, 1993—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, The Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On April 16, 1992, Office of Disciplinary Counsel (hereinafter petitioner) filed a petition for discipline against [respondent] (hereinafter respondent) which charged him with professional misconduct involving neglect, commingling, misrepresentation, failure to maintain an escrow account, and failure to return funds belonging to a client and the unearned portion of a fee.

Respondent did not file an answer within the prescribed period of time.

On August 5, 1992, the matter was referred to Hearing Committee [    ], chaired by [    ], Esquire, and included members [    ], Esquire, and [    ], Esquire. A pre-hearing conference was held on September 25, 1992. A hearing was held on October 22, 1992, and a continued hearing was held on November 2, 1992.

On December 10, 1992, petitioner filed a brief to Hearing Committee [    ] requesting that the Hearing Committee recommend that respondent be suspended from the practice of law for a period of at least one year and one day.

On March 2, 1993, the Hearing Committee filed its report and recommended that respondent receive a public censure. Neither the petitioner nor the respondent filed exceptions to the report of the Hearing Committee.

The matter was adjudicated at the April 23, 1993 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule

207 of the Pennsylvania Rules of Disciplinary Enforcement (hereinafter Pa.R.D.E.), with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent was born in 1943 and was admitted to practice law in the Commonwealth of Pennsylvania in 1975. (N.T. II 94, 96.)

(3) Respondent's current office is located at [    ]. He also maintains offices in [    ] and in [    ]. (N.T. II 106-107.)

(4) In the summer of 1987, [A] retained respondent to assist him in keeping his property, located at [    ], which had been foreclosed upon. (Stip. 1.)

(5) [A] promptly paid [B], who worked for respondent, a retainer of $500. (Stip. 2.)

(6) According to [B] he had informed [A] that the total fee for a Chapter 13 bankruptcy was approximately $1,000, but that $500 of it would be recovered through the plan. (N.T. II 34.)

(7) [B] found that the property being foreclosed upon was held by a corporation solely owned by [A]. Since the property was held by a corporation and not by [A] personally, a Chapter 11 bankruptcy was the appropriate remedy instead of a Chapter 13. (N.T. II 47.)

(8) The Chapter 11 filing fee was $500 rather than the $90 fee of a Chapter 13. (N.T. II 32, 47.)

(9) Respondent, testified that he believed that he informed [A] that the total fee for a Chapter 11 corporate bankruptcy would be approximately $2,500. (N.T. II 47.)

(10) [A] paid another $500 to [B] in lieu of the increased filing fee of a Chapter 11 bankruptcy. (N.T. II 33.)

(11) [B] began work on the Chapter 11 bankruptcy but was told to hold up by [A] during the summer of 1987 because [A] was close to settling a disability case which would give him a lump sum payment, which, in turn, would enable him to pay out the mortgage. (N.T. II 33.)

(12) Sometime later, [A] secured a private buyer, [C], for the property. (Stip. 3.)

(13) On or about November 6, 1987, respondent met with [C] and [A] at his office. (Stip. 4.)

(14) A sale price of $31,000 for the property had been agreed to by both [A] and [C]. (Stip. 5.)

(15) On November 6, 1987, [C] paid [A] $1,000 as a down payment on the property. At that time, [A] gave respondent the $1,000. (Stip. 6.)

(16) Respondent understood that he was to escrow the $1,000 pending the completion of the real estate sale. (Stip. 7.)

(17) Respondent believes he directed his office manager to deposit the down payment into his escrow account. (Stip. 8.)

(18) On November 20, 1987, [C] and [A] executed a real estate installment sales agreement at respondent's office. (Stip. 9.)

(19) The agreement was previously drafted by someone other than the respondent. Respondent made several changes in pen on the agreement before it was signed. (N.T. II 48.)

(20) Respondent never received any installment payments from [C]. (N.T. II 63.)

(21) On December 7, 1987, the property was sold to [C] at the sheriff's foreclosure sale. (Exhibit P-15.)

(22) Respondent believes that he closed out his existing escrow account and withdrew the $1,000 down payment from it in March of 1988. (Stip. 10.)

(23) In March of 1988, [A] unable to find respondent:

"A. filed a Chapter 13 bankruptcy petition, pro se, to stop the foreclosure on his property;

B. retained [D], Esquire, to represent him on the matter." (Exhibit P-5; N.T. I 29.)

(24) In or about March of 1988, [D] contacted respondent and informed him that she represented [A]. (Stip. 12.)

(25) [D] requested respondent to return [A's] file and the escrowed funds. (N.T. I 95; Exhibit P-16.)

(26) Respondent failed to promptly return any part of the $1,000 retainer. (Stip. 13.)

(27) From the time he closed out his escrow account in March of 1988 until approximately September of 1989, respondent failed to deposit the $1,000 down payment in a separate bank account, return the $1,000 down payment to [C] or pay the $1,000 down payment to [A]. (Stip. 11.)

(28) On July 5, 1988, [D] filed a Chapter 7 bankruptcy petition on behalf of the owner of the property, [A's] corporation, [E], in the U.S. Bankruptcy Court for the [   ] District of Pennsylvania, no. [   ]. (Stip. 14.)

(29) On March 30, 1989, [D] filed a complaint for turnover in the above bankruptcy captioned [E] v. [respondent], Adv. no. [   ], in which she claimed inter alia that respondent owed the estate $2,000 for the funds paid respondent by or for the benefit of [A] or [E]. (Stip. 15.)

(30) On September 11, 1989, [D] filed a motion to compromise claim for $1,500 in the above matter. (Stip. 16.)

(31) By Order dated October 20, 1989, the Honorable [F] Bankruptcy Judge, approved the motion to compromise. (Stip. 17.)

(32) On December 8, 1988, respondent opened [G] Bank account no. [   ] entitled "[respondent], Esq. Attorney Escrow Account" (hereinafter "escrow account"). (Stip. 18.)

(33) From March 1989 through November 1989, respondent utilized this account both to safeguard his clients' funds and to satisfy his personal obligations. (N.T. II 11-20; Exhibit P-10, P-12.)

(34) By two checks dated September 1, 1989, totaling $1,500 and written on the escrow account, respondent satisfied [A's] bankruptcy claims. (Stip. 19)

(35) On October 5, 1989, respondent certified on his attorney registration statement that at no time after May 1, 1988 did he hold funds of a client as an escrow agent or in a fiduciary capacity in any financial institution. (Stip. 20.)

(36) On September 20, 1978, respondent received three informal admonitions for his misconduct in five cases involving violations of Disciplinary Rules 1-102(A)(6), 2-110(A)(2) and (3), 2-110(B)(4), 2-110(C), 6-101(A)(3), 7-101(A)(1), (2) and (3), 7-102(A)(8), 9-102(A)(4), 9-102(B)(4). (Exhibit ODC-1.)

(37) On September 17, 1985, respondent received an informal admonition for his misconduct involving violations of Disciplinary Rules 2-110(A)(2) and (3), 6-101(A)(3), 7-101(A)(1) and (2), 9-102(B)(4). (Exhibit ODC-1.)

(38) On April 10, 1992, respondent was administered a private reprimand for his misconduct in two (2) cases involving violations of the Rules of Professional Conduct 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.16(d) and 1.4(a). (Exhibit ODC-1.)

## III. CONCLUSIONS OF LAW

Respondent violated Rule of Professional Conduct 1.15(b) by failing to promptly deliver to his client the funds to which he was entitled upon the client's new attorney's subsequent demand that respondent do so.

Respondent violated Disciplinary Rule 2-110(A)(3) by failing to return to his client the property, that is, the $500 filing fee, to which the client was entitled upon respondent being discharged from further employment.

Respondent violated Rule of Professional Conduct 1.15(a) by withdrawing the funds which he held for his client from the escrow account.

Respondent violated Rule of Professional Conduct 8.4(c) and Pa.R.D.E. 219(d)(iii) by falsely certifying to the Administrative Office that he did not maintain any escrow account into which he had deposited funds belonging to others during the time in which he did maintain such an escrow account.

## IV. DISCUSSION

The first and dispositive issue that the board must resolve is whether the respondent violated any of the Disciplinary Rules of the Code of Professional Responsibility or Rules of Professional Conduct, and is, therefore, deserving of discipline. As stated in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 580, 506 A.2d 872, 875 (1986), "The evidence is sufficient to prove

ethical misconduct if a preponderance of that evidence establishes the charged violation and the proof is clear and satisfactory." Thus, the board must determine whether any of the professional rules charged were clearly and satisfactorily proven by the evidence in the record.

In the present matter respondent, or a person in respondent's employ, was retained by [A] to assist him in keeping his property located at [ ], which had been foreclosed upon.

### a. Respondent's Representation of [A] Regarding the Bankruptcy

Petitioner charged respondent with violating D.R.s 1-102(A)(6), 6-101(A)(3), and 7-101(A)(1), (2) and (3) for failing to initiate bankruptcy proceedings on [A's] behalf to forestall the foreclosure of his real property.

In the summer of 1987, [A] retained respondent to assist him in keeping his property which had been foreclosed upon. At the initial meeting between [A] and [B], who was employed by respondent, he advised [A] that a Chapter 13 bankruptcy would be the appropriate procedure to protect the property. [A] paid a $500 retainer. Subsequent to the first meeting, [B] learned that the real property was not owned by [A] individually but rather by his corporation. [B] advised [A] that given the corporate ownership of the property, a Chapter 11 reorganization rather than a Chapter 13 would be the appropriate remedy. [B] then explained that the filing fee would be $500 for a Chapter 11 rather than $90 for a Chapter 13. [B] also advised that the fee would be substantially higher. [A] gave another $500 which [B] characterized as the filing fee for a Chapter 11 bankruptcy.

[B] was preparing the Chapter 11 bankruptcy in the summer of 1987 when [A] called and informed him to "hold up" on the bankruptcy because he was close to settling a disability case which would give him a lump sum payment which, in turn, would enable him to pay out the mortgage. (N.T. II 33.) [B] followed [A's] instructions and discontinued work on the Chapter 11 bankruptcy. [B] did not hear from [A] until the fall of 1987 when [A] appeared unannounced with a person named [C] who was prepared to purchase the property.

Respondent testified that his first meeting with [A] was when [B] brought him in to meet respondent to discuss the Chapter 11 bankruptcy. Respondent advised [A] that the Chapter 11 would cost approximately $2,500. It was at that time that [A] paid an additional $500. Respondent also testified that [A] called and told him that he did not wish to do a Chapter 11 anymore because he was interested in selling the property. (N.T. II 48.)

For the aforementioned conduct, petitioner charged respondent with violations of D.R. 1-102(A)(6), which prohibits an attorney from engaging in conduct which adversely reflects on his fitness to practice law; D.R. 6-101(A)(3), which prohibits an attorney from neglecting a legal matter entrusted to him; D.R. 7-101(A)(1) and (2), which prohibits an attorney from intentionally failing to seek the lawful objectives of a client or to carry out a contract of employment; and, D.R. 7-101(A)(3), which prohibits an attorney from prejudicing his client.

As pointed out by the Hearing Committee, the only clear proof which emerges from the record concerning respondent's failure to file a bankruptcy petition on behalf of [A] "is that there was a woeful lack of com-

munication between the parties as to what was to be done by respondent and under what conditions." (H.C. report p. 11.) This being the case, the board cannot find any violation of the charges made by petitioner in regard to respondent's failure to file a bankruptcy petition on behalf of [A].

### b. Respondent's Alleged Failure to Pursue [A's] Remedies Under a Breached Real Estate Installment Sales Agreement

Petitioner charged respondent with the same violations in connection with the respondent's alleged failure to pursue [A's] remedies under the breached real estate installment sales agreement that [A] had with [C]. However, the record is insufficiently clear to find any violation of the above rules.

Petitioner charges that having negotiated an installment purchase agreement of sale for [A] with a buyer, [C], respondent failed to enforce [A's] remedies under the agreement of sale when the buyer defaulted by not making the required monthly payments. Petitioner also charges that respondent's failure to pursue these remedies led to the purchase of the property by the buyer at a sheriff sale, thus depriving [A] of his investment in the property.

The lease-purchase agreement between [A] and [C] was signed in respondent's office. It was, however, already drafted by a realtor named [H] according to respondent. Respondent made some changes in pen on the previously drafted agreement before the parties signed it. The agreement was signed and a $1,000 down payment was paid by [C] to respondent to hold as the settlement was to occur in June of the following year. Respondent states that he did not see [A] again until the day of the hearing in this matter.

From the testimony of both the parties, it cannot be determined who was to receive the rent money and when, if ever, any notification of default and request for remedial action was communicated to the respondent. Therefore, the board cannot find that the evidence on this record proves the charged violations clearly and satisfactorily.

### c. *Respondent's Failure to Return Unearned Retainer and Down Payment*

Rule of Professional Conduct 1.15(b) requires an attorney to deliver promptly to his client funds that person is entitled to receive. In March of 1988, [A] retained [D] to represent him in connection with his property and [D] advised respondent of the representation by delivering a note to him. [D's] note to respondent clearly requested respondent to "advise how I can get his file and his escrow... ." (P-16.)

Respondent did not turn over the $1,000 down payment, which he was holding, pursuant to the agreement of sale until ordered to do so by the bankruptcy court 18 months after [D's] initial note. (N.T. I 101.) Once respondent learned of the filing of the two bankruptcy petitions by [D] on behalf of [A], he should have made arrangements to contact the trustee and pay him the $1,000 with notice to both [C] and [D]. Respondent had no justification to withhold payment of the escrow sums and requiring [A's] counsel to file an adversary complaint to the bankruptcy proceedings to compel the turnover of these funds. Respondent has, therefore, violated R.P.C. 1.15(b).

Petitioner also charged that, in failing to return to [A] the $1,000 which had been paid to respondent as a retainer, respondent violated D.R. 2-110(A)(3). This rule requires a lawyer who withdraws from employment

to refund promptly the unearned fee and any property to which his client is entitled.

Respondent's agent, [B], told [A] that $500 of the retainer represented the filing fee for a Chapter 11. Neither respondent nor [B] filed a Chapter 11 bankruptcy petition on behalf of [A]. There is no justification in the record for respondent's failure to return to [A], his attorney or the trustee in bankruptcy, the $500 which had been paid as a filing fee for the Chapter 11 proceeding. Thus, the evidence is sufficient to find that respondent violated D.R. 2-110(A)(3).

### d. Failure to Maintain Funds in a Separate Bank Account

Petitioner has charged respondent with violating Rule of Professional Conduct 1.15(a), which requires an attorney to maintain funds belonging to others in a separate bank account; and, violating Rule of Professional Conduct 8.4(c), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. The record establishes that respondent withdrew money from the escrow account which held [A's] funds. From March of 1987, when respondent closed his escrow account, until just prior to September of 1989, when he deposited the funds into his newly opened escrow account, respondent testified that he kept the $1,000 escrow money in the form of cash in a suit pocket in his house. Respondent thus failed to comply with the strict requirements of R.P.C. 1.15(a).

Petitioner asserts that respondent used [A's] money, withdrawn from his escrow account, for his own purposes in violation of R.P.C. 8.4(c). The board agrees with the Hearing Committee that the petitioner has offered no proof that respondent used these funds for his own purposes.

## e. Commingling of Funds

Petitioner has charged that respondent violated Rule of Professional Conduct 1.15(a) by failing to hold the property of clients in respondent's possession separate from the respondent's own property.

In support of this, petitioner has offered into evidence and respondent has stipulated to Exhibit P-12, which is a computer-produced spreadsheet reflecting an analysis of respondent's checking account at [G] Bank titled "attorney escrow account." Petitioner asserts that respondent's payments to the [    ] bar association as referral fees were non-client related payments in violation of the rule. However, the board finds that there is not sufficient, clear and satisfactory proof that the payment of these items evidences a commingling of respondent's funds with clients in violation of the rule. It would appear from respondent's testimony that the payments to the bar association were payments to the lawyer referral service for referrals of clients. The board does not find any violation of the rules in paying the referral fee to the bar association on a particular case out of funds which would then be used to pay fees earned by respondent.

In addition, the board does not find that entries for the [I], Inc., in the amount of $160.08, have been shown to be in violation of the rule. These payments may or may not be direct payment of copying expenses on a particular case from funds deposited by a client.

There are, however, eight improper payments which respondent has admitted were done by inadvertence. (N.T. II 83.) While there is a literal violation of the rules in the case of these improper payments, the board believes that the petitioner has not demonstrated a pattern of commingling on the part of respondent and

believes that these eight violations are de minimis. The board, therefore, does not find a violation of R.P.C. 1.15(a) insofar as it relates to commingling of funds.

## f. False Certification to the Disciplinary Board

Petitioner has charged respondent with violating Pa.R.D.E. 219(d)(iii), which requires an attorney to file an annual registration statement disclosing the names and addresses of each financial institution into which the attorney has held funds of a client in a fiduciary capacity or as an escrow agent; R.P.C. 8.4(c), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and, R.P.C. 8.4(d), which prohibits an attorney from engaging in conduct prejudicial to the administration of justice. Petitioner contends that respondent violated these rules when he failed to disclose the existence of his [G] bank account on his 1989-90 registration statement. Respondent admitted that on October 5, 1989 he certified on his attorney registration statement that at no time after May 1, 1988 did he hold funds of a client as an escrow agent or in a fiduciary capacity in any financial institution. In fact, respondent opened an attorney escrow account with [G] bank on or about December 8, 1988. The board, therefore, finds that respondent violated Pa.R.D.E. 219(d)(iii). In addition, the board finds that respondent violated R.P.C. 8.4(c) in that his false certification was a result of a negligent misrepresentation on his annual registration statement. The board does not find that this conduct was prejudicial to the administration of justice in violation of R.P.C. 8.4(d).

Having established respondent's violation of R.P.C. 1.15(a), R.P.C. 1.15(b), R.P.C. 8.4(c), D.R. 2-110(A)(3), and Pa.R.D.E. 219(d)(iii) the board must now decide

the proper level of discipline to impose. As stated in *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 80, 526 A.2d 1180, 1186 (1987), the primary purpose of our disciplinary system is to protect the interests of the public while also upholding the integrity of the bar. In addition, the specific facts of each case must be considered to determine whether the severity of the sanction should be aggravated or mitigated by other factors.

Because of the lack of severity of respondent's misconduct, this type of matter would, without more, be resolved with a sanction less than public. However, respondent has extensive prior discipline. This prior discipline consists of three informal admonitions in 1978, for neglect of clients' cases, commingling of funds, and refusal to return property upon discharge from employment; an informal admonition in 1985, for neglect of a matter entrusted to him and failure to return a client's property upon discharge from employment; and, a private reprimand in 1992, for neglect of a legal matter entrusted to him and failure to return client's property upon discharge from employment. The magnitude of this prior discipline mandates that a more drastic sanction be imposed upon respondent than mere private discipline. Therefore, the board unanimously believes that the more extensive discipline of a public censure is in order. Such a sanction will preserve the integrity of the bar and put respondent on notice that further misconduct will invite even greater sanctions from the board.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [     ], be subjected to a public censure.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Members Hill, Lieber and Flaherty did not participate in the adjudication.

## ORDER

And now, October 26, 1993, upon consideration of the report and recommendations of the Disciplinary Board dated August 11, 1993, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of two years and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Chief Justice Nix dissents and would accept the recommendation of the Disciplinary Board.

Mr. Justice Zappala dissents and would suspend respondent for one year.